**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

WILLIE WELLS                                                                                              PLAINTIFF

V.                                               3:12CV00251-KGB-JTK

PAUL PAYMENT, et al.                                                                            DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

An Evidentiary Hearing was held in this case before the Court on February 12, 2014. Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following Proposed Findings and Recommended Disposition.

**I.      Introduction**

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 1983 while incarcerated at the Crittenden County Detention Facility (Jail), alleging excessive force and failure to protect by Defendants. He reported his release from incarceration on March 5, 2013 (Doc. No. 49), but on the date of the Evidentiary Hearing, appeared again in the custody of the Jail. (Doc. No. 65.) His allegations against Defendants Coleman, Bonner, Mobley, Maloney, Thomas, and Brown were dismissed on December 3, 2013 (Doc. No. 60). The sole claim at issue before the Court is that Defendant Payment used excessive force against him on October 31, 2012. Plaintiff asks for monetary relief from Defendant.

In his Amended Complaint (Doc. No. 3), Plaintiff alleges Defendant Payment deliberately tased him twice in the back and kicked him several times in the back without proper cause or

justification, on October 31, 2012. (Doc. No. 3, p. 7.) Plaintiff claims Payment's actions were retaliatory because Wells filed a grievance against him on October 9, 2012, alleging that Payment threatened him bodily harm. (Id.)

## II.     Factual Findings

### A.     Evidentiary Hearing Testimony

#### 1.     Plaintiff Willie Wells

At the time of the incident at issue, Wells was incarcerated at the Crittenden County Detention Center (Jail). He was released in February, 2013. On October 31, 2012, Payment and other officers came to his cell, and told him to pack his property because he was going to be moved to a holding cell. Former Defendant Malone placed handcuffs on Plaintiff, and Defendant Payment dragged Plaintiff's property down the hall. Malone instructed Plaintiff that when they reached the cell, he would remove Plaintiff's cuffs and Plaintiff should keep his hands on the bunk until Malone exited the cell. When Plaintiff entered the cell, Defendant Payment stood near him pointing a taser at him while Malone removed his handcuffs. As Malone exited the cell, Plaintiff bent over to pick up his property and Payment tased him in the back twice. Plaintiff fell to the floor and Payment then kicked him in the back. Former Defendants Brown and Thomas asked Payment why he tased and kicked Plaintiff. The next day, Plaintiff was taken to the nurse, who recorded no injuries.

Plaintiff admitted that after Malone left the cell, he refused Payment's direct order to keep his hands on the bunk, and instead continued to unpack his property. He claimed he did not threaten anyone and paid no attention to Payment until Payment tased him in the right side of his back.

#### 2.     Officer J. B. Brown

Brown was present at the incident, but did not witness the tasing because he was standing

outside of Plaintiff's cell. After the tasing, he saw that only one probe of the taser was stuck in Plaintiff's back. He also said as Plaintiff entered the cell he made accusations and threats against the officers, but no gestures which threatened harm against anyone. He did not recall signing a grievance that Plaintiff filed against Payment two weeks prior to the incident, and said that even if he did, officers are not involved in investigating grievances.

### 3. Officer Courtney Malone

Malone worked at the Jail from September, 2010, until February, 2013. He recalled placing handcuffs on Plaintiff on the day of the incident so that Plaintiff could be escorted to a different cell. He stated he told Plaintiff to keep his hands on the bunk until "we" (meaning officers remaining in the cell) left the cell, and Payment's actions were justified because Plaintiff refused to follow Payment's order. He did not ask Payment why he tased Plaintiff and did not tell him he should not have tased him. Although he was not in the cell when Payment tased Plaintiff, he did hear Plaintiff say at some point, "if I do this, what are you going to do." Plaintiff was agitated while he was in the cell, speaking in a high-pitched voice and threatening to sue everyone. The cell was small, and as long as Plaintiff did not keep his hands on the bunk, he posed a threat, because one could not know how he would use his hands, such as to pick up a shank. Malone stated that pursuant to the Jail's use of force policy, failure to comply with an order could be sufficient reason to tase an inmate, considering the size of the cell and the officer's perception.

### 4. Sgt. Jeff Thomas

Thomas recalled the incident but was not inside the cell at the time. He heard Malone tell Plaintiff to keep his hands on the bunk, and he heard Payment give Plaintiff two direct orders to keep his hands on the bunk. He stated Wells was not an easy person to deal with, and was agitated on

the day of the incident. Earlier that same day, Wells loudly argued with him, and was moved because he caused a "ruckus" among the inmates by loudly complaining and cussing. Since Thomas was not in the cell at the time Plaintiff was tased, he could not say how Payment viewed the situation, but if he felt like he was in danger, he was justified in tasing Plaintiff. Thomas entered the cell after the tasing and saw that one probe entered Plaintiff's right shoulder blade, but that the other probe did not puncture Plaintiff's skin and was stuck in his shirt. He helped pull out the one probe and assisted Plaintiff in getting to his bunk. He inspected where the probe punctured Plaintiff's skin, by lifting his shirt, but did not observe any bleeding and did not assess a need for medical treatment.

### 5. Officer Paul Payment

Officer Payment was a property officer at the Jail for three years and also was certified to carry a taser. During the taser training, he was instructed to follow certain steps in using force: first, issue a verbal command, and second, if possible, put hands on the subject. After that, non-lethal force in the form of a taser or pepper spray was permissible. .

He remembered an encounter with Plaintiff on October 9, 2012, when he entered Plaintiff's area to search for contraband. He noticed Plaintiff had cut a pair of pants and was using them to cover his arms, like a shirt. When he asked Plaintiff about that, Plaintiff told him a night shift supervisor authorized his actions. Plaintiff did not, however, respond when Payment asked him if he had a blanket. When Payment asked him to give up the pants, Plaintiff refused, and Payment summoned another officer for assistance. Plaintiff later gave the pants to another officer.

On October 31, 2012, Payment was asked to help Officer Malone escort Plaintiff to another cell. As Payment gathered Plaintiff's property, Plaintiff became angry because he did not know why

he was being moved, and threatened to sue them. Payment entered the new cell first with Plaintiff's property, and stayed in the cell to provide back-up to Malone. Malone told Plaintiff to keep his hands on the bunk until they left, and after Plaintiff was uncuffed, Payment twice told Plaintiff to keep his hands on the bunk. Because Plaintiff ignored him, he took out his taser and as he started to leave the cell, he tripped on a mat on the floor. Plaintiff then took his hands off the bunk and moved toward Payment in an aggressive manner. The cell was small with very little distance between the two. At that point, Payment perceived a threat from Plaintiff and shot him with the taser. Thomas and Malone then returned to the cell and helped Plaintiff back to his bunk.

Payment denied striking or kicking Plaintiff and denied that anyone questioned his actions. He said that as Plaintiff moved toward him, Plaintiff jerked away quickly when he saw Payment firing the taser, thereby explaining how Plaintiff received the probe in the right side of his back.

### 6. Jail Administrator Ronnie Coleman

Coleman reviewed Payment's incident and use of force reports prepared after the incident, and found no evidence of an excessive use of force. He stated that the cell was 7.5 feet wide, by 10 feet long, and included two bunks, a sink and a toilet, thereby allowing about 50-60 square feet of floor space. He did not know what Officer Payment believed at the time, but stated the reports and statements of the other officers present at the incident supported Payment's decision. No other officer stated that Payment should not have tased Plaintiff. Although at the time of the incident, Plaintiff suffered from a broken foot, he remained capable of assaulting an officer. When reviewing the reports, Coleman considered several factors, such as the size of the individuals involved, what the officer perceived as a threat at the time, whether the officer was in close proximity to the inmate, and whether he was able to easily exit the cell without using force. Plaintiff is a difficult individual

to deal with because he does not obey orders, argues about everything, and constantly threatens to sue the officers. Coleman has not, however, known Plaintiff to physically harm an officer.

### III. Legal Conclusions

It is unclear to the Court whether Plaintiff was a pretrial detainee at the time of the incidents in question. Assuming he was, the Court should use the Fourth Amendment to analyze his excessive force claim. Wilson v. Spain, 209 F.3d 713, 716 (8th Cir. 2000) In doing so, the reasonableness of Defendant's use of force "'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Id., quoting Graham v. Connor, 490 U.S. 386, 396-7 (1989). In addition, Plaintiff must prove that Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official drew that inference. Perkins v. Grimes, 161 F.3d 1127, 1130 (1999).

The Court finds Plaintiff does not prove, by a preponderance of the evidence, that Defendant acted in an excessive manner. At trial, the Court was able to visualize the potential threat of harm posed by the Plaintiff, from his demeanor, his loud voice, and his aggressive actions. Plaintiff is significantly taller than Defendant Payment, and given the limited amount of space in the cell when occupied by them both, the Court finds that Plaintiff's failure to obey Payment's direct orders on two occasions, and his actions in the cell, were sufficient to produce a reasonable inference of harm in Payment's mind.

### IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendant Payment have Judgment over Plaintiff, and Plaintiff's complaint against Defendant Payment be DISMISSED with prejudice.

7

IT IS SO RECOMMENDED this 28th day of February, 2014.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE