IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

WILLIE WELLS
ADC # 100985                                                                                                            PLAINTIFF

v.                      Case No. 3:12-cv-00251-KGB-JTK

PAUL PAYMENT, et al.                                                         DEFENDANTS

### ORDER

The Court has received Proposed Findings and Recommendations from United States Magistrate Judge Jerome T. Kearney (Dkt. No. 68). After a review of those Proposed Findings and Recommendations, and the timely objections received thereto, as well as a *de novo* review of the record, the Court adopts the Proposed Findings and Recommendations in their entirety as this Court's findings of fact and conclusions of law. Plaintiff Willie Wells filed timely objections to the Proposed Findings and Recommendations. For the following reasons, the Court overrules the objections.

        **I.**          **Factual Background**

Mr. Wells filed this *pro se* action pursuant to 42 U.S.C. § 1983 while incarcerated at the Crittenden County Detention Facility ("Jail"), alleging excessive force and failure to protect by defendants. Mr. Wells reported his release from incarceration on March 5, 2013, (Dkt. No. 49), but as of the date of the February 12, 2014, evidentiary hearing before Magistrate Judge Kearney, Mr. Wells was again in custody (Dkt. No. 65). The sole claim before the Court is that defendant, Officer Paul Payment, used excessive force against Mr. Wells on October 31, 2012. Mr. Wells seeks monetary relief from Officer Payment.

In the Proposed Findings and Recommendations, Judge Kearney recommended that this Court enter judgment in favor of Officer Payment and dismiss Mr. Wells's complaint with

prejudice (Dkt. No. 68). Judge Kearney found that Mr. Wells did not prove by a preponderance of the evidence that Officer Payment acted in an excessive manner under the Fourth Amendment. Judge Kearney determined that Officer Payment reasonably inferred harm from Mr. Wells based on Mr. Wells's demeanor, loud voice, and aggressive actions; Mr. Wells's significant height advantage over Officer Payment; the limited space in the cell where the incident occurred; Mr. Wells's failure to obey Officer Payment's direct orders on two other occasions; and Mr. Wells's actions in the cell, including failure to obey orders.

Mr. Wells submitted to the Court a notice of proof on February 24, 2014, claiming that Officer Payment pointed a taser at Mr. Wells on October 9, 2012, and alleging that the Jail refused to produce a video of the incident (Dkt. No. 67). Mr. Wells filed objections to the Proposed Findings and Recommendations on March 17, 2014. In his objections, Mr. Wells first claims that he did not have "access to any legal materials … to help him prepare his Rebuttal to the Proposed Findings and Recommendations Instructions." Next, Mr. Wells argues that the February 12, 2014, hearing was unfair because the administrator of the facility where he was incarcerated prevented him from having his evidence and legal documents at the hearing and denied him access to contact witnesses. Mr. Wells also disputes Officer Payment's testimony that he tripped in the cell and objects to Judge Kearney's finding that Mr. Wells's actions and the cell's limited space justified Officer Payment's tasing of Mr. Wells. The Court overrules each of Mr. Wells's objections and will examine each objection in turn.

**II.     Standard Of Review**

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court is not required to review, under a *de novo* or any other standard, the

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). When reviewing proposed findings and recommendations *de novo*, the Court will consider the fact that Plaintiff is acting *pro se* and give his pleadings a liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### III. Access To Legal Materials For Objections To Proposed Findings And Recommendations

It is unclear whether Mr. Wells's objection regarding access to legal materials in preparation of his "rebuttal" to the Proposed Findings and Recommendation is independent from his objections to not having access to legal materials and evidence at the February 12, 2014, hearing. Mr. Wells does not provide any specific details about his alleged inability to access legal materials. To the extent that this objection is independent from his other objections, the Court overrules the objection.

Prisons have an affirmative obligation to provide access to the courts. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Nonetheless, if a prison fails to provide adequate access to the courts by failing to provide adequate access to legal materials, an "inmate. . . must go one step further [beyond claiming an inadequate library or inadequate legal assistance] and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. "Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access. . . .." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992). The Jail need only provide access that is "adequate, effective, and meaningful when viewed as a whole." *Id.* (citing to *Bounds v. Smith,* 430 U.S. 817, 823, 832 (1977)). For a prisoner to establish that he was denied meaningful access to the

courts, he must submit evidence showing that he suffered an "actual injury" as a result of the defendants' actions. *Lewis*, 518 U.S. at 348-49; *see also White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.

Mr. Wells has made general allegations that he did not have access to legal materials, but he has failed to point to any specific shortcoming in the Jail or elsewhere and has not demonstrated how any alleged shortcoming has hindered his efforts to pursue a legal claim. Mr. Wells has made numerous arguments and submitted evidence to this Court throughout the progress of his case, and nothing in the record indicates that the Jail has prevented him from adequately pursuing his claims. Therefore, the Court overrules Mr. Wells's objection regarding his access to legal materials in preparation of his objections to the Proposed Findings and Recommendations.

### IV. Objections To Evidentiary Hearing

Mr. Wells first alleges that the evidentiary hearing held before Judge Kearney on February 12, 2014, was unfair because Mr. Wells had neither "his evidence nor his legal documents." Mr. Wells claims that, prior to the hearing and while Mr. Wells was incarcerated, an administrator denied him access to legal documents, including two inmate-witnesses' notarized affidavits, which Mr. Wells had previously submitted to the Court (Dkt. No. 43). Mr. Wells also claims that the administrator denied him access to the phone and refused to give him "any information on how to contact [two officers that] had knowledge of the incident and [were] going to testify in [Mr. Wells's] behalf" (Dkt. No. 69, at 2).

A.     **Witness Affidavits And Legal Materials**

At the February 12, 2014, hearing, Judge Kearney asked Mr. Wells if any inmates were in the cell where Officer Payment tased Mr. Wells. Mr. Wells responded:

> Two inmates were standing there looking at it, but I didn't know, when the court thing came up and I got incarcerated for a parole violation and I didn't get a chance to notify, wasn't able to use the phone or notify anyone, or the inmate. I've got it in my file, Inmate Tucker and McFadden. They were standing right there looking at it. If they wrote a witness statement, it should be one in the file. I don't have my paperwork. But I have a witness statement where they wrote a witness statement when it happened. It's in my jacket, though, witness statement that they seen everything and I would present it to you. But I don't know why he tased me. That's the main thing. Why did he tase me?

(Transcript of Evidentiary Hearing, at 12-13).

With his objections, Mr. Wells submitted affidavits from two individuals who were inmates at the time of the event. The Court notes that Mr. Wells submitted these affidavits to the Court as a supplement to his amended complaint (Dkt. No. 43) and brought this issue to the attention of Judge Kearney at the February 12, 2014, hearing (Transcript of Evidentiary Hearing, at 12-13). Thus, nothing in the record shows that Judge Kearney failed to consider these affidavits when he entered his Proposed Findings and Recommendations. Nonetheless, this Court has reviewed these affidavits in making its *de novo* review of the record at this stage of the proceeding.

The first inmate, Calvin Ray McDaniel, states in his affidavit that he "heard something pop and Wells said to Ofc Payment, why did you taze [sic] me." Mr. McDaniel says that he saw Officers Thomas, Brown, and Omar "run back into the cell" and that the officers began arguing with Officer Payment. Mr. McDaniel does not state that he saw the incident himself. The second inmate, Calvin Tucker, states in his affidavit that he saw Officer Payment "harassing Wells, for no reason" and that he heard Officer Payment "saying something to Wells, and Wells

said something back."  Mr. Tucker also states that he saw Mr. Wells "bent over to pick up his mat," thus confirming that Mr. Wells did not obey the order to keep his hands on the bed post. Although Mr. Tucker says "officer Payment then tazed [sic] Wells," he does not state whether he saw the tasing.  He provides no other details.  Finally, Mr. Tucker states that he too saw officers arguing with Officer Payment after the incident.

The affidavits do not change the critical facts.  Neither Mr. McDaniel nor Mr. Tucker's statements challenge Judge Kearney's determination that Officer Payment reasonably inferred harm from Mr. Wells based on Mr. Wells's aggressive actions, physical presence, and repeated disobedience and the limited space in the cell where the tasing occurred.  Therefore, even considering these affidavits along with all other record evidence, the Court finds that Mr. Wells has not demonstrated by a preponderance of the evidence that Officer Payment used excessive force against Mr. Wells on October 31, 2012.  Accordingly, Mr. Wells's claimed inability to present these affidavits at the February 12, 2014, hearing does not persuade this Court to reject or modify Judge Kearney's Proposed Findings and Recommendations.

### B.   Access To Officers Hayes And Omar

Mr. Wells next alleges that the administrator denied him access to a phone and denied him contact information for communicating with the two officers who were potential witnesses (Dkt. No. 69, at 2).  In his objection to the Proposed Findings and Recommendations, Mr. Wells prays that this Court order the clerk to summon two officers, Lacollis Hayes and Dove Omar, as witnesses in a new evidentiary hearing (Dkt. No. 6).  Mr. Wells claims that these two officers, who did not testify at the February 12, 2014, hearing, witnessed the incident.  Mr. Wells mentioned one of these officers—Officer Omar—during the February 12, 2014, hearing (Transcript of Evidentiary Hearing, at 10).  Mr. Wells mentioned that Officer Omar was standing at the cell door during the incident with other officers who testified at the hearing.  In Mr.

Wells's objections to the proposed findings and recommendations, he claims that Officers Omar and Hayes stated to Mr. Wells and other inmates that Officer Payment was wrong for tasing Mr. Wells.  The Jail Incident Report lists both Officers Hayes and Omar as involved in the incident (Dkt. No. 69, at 8).  Although Mr. Wells noted to Judge Kearney that Officer Omar was not at the hearing, Mr. Wells did not object at the hearing for this reason.

"Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use." *Aswegan*, 981 F.2d at 314.  The Jail need only provide access that is "adequate, effective, and meaningful when viewed as a whole." *Id.* (citing to *Bounds v. Smith,* 430 U.S. 817, 823, 832 (1977)).  As stated above, for a prisoner to establish that he was denied meaningful access to the courts, he must show that he suffered an "actual injury." *See Lewis*, 518 U.S. at 348-49.  Again, an "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

Mr. Wells has not persuaded this Court that he has been prejudiced in his ability to pursue his claim against Officer Payment.  Mr. Wells mentioned Officer Omar's absence from the proceedings at the February 12, 2014, hearing.  At that time, however, he made no claim that the Jail had prevented him from contacting or calling as witnesses Officers Omar or Hayes.  In fact, the record indicates that Mr. Wells never mentioned any denial of access to these officers or their potential testimony in his favor until filing his objections to the Proposed Findings and Recommendations.

Further, accepting as true Mr. Wells's new allegations regarding the potential testimony of Officers Omar and Hayes does not change the facts on which Judge Kearney based his Proposed Findings and Recommendations.  In his objections, Mr. Wells claims that Officers

Omar and Hayes stated to him and other inmates "that [Officer] Payment was wrong for tazing [sic] plaintiff" (Dkt. No. 69, at 2). Mr. Wells has not claimed that Officers Omar or Hayes saw or witnessed anything differently than the five other officers who testified at the February 12, 2014, evidentiary hearing.

Even if Officers Omar and Hayes did in fact disagree with Officer Payment's actions—which nothing in the record proves—this disagreement alone does not impact Judge Kearney's finding that, based on what occurred in the cell, Officer Payment reasonably inferred that he might be harmed by Mr. Wells. Moreover, in Mr. McDaniel's affidavit, which Mr. Wells submitted to this Court, Mr. McDaniel states that Officer Omar ran into the cell with other officers after Officer Payment shot the taser. Mr. Tucker's statement neither mentions any officer by name nor claims that any officer witnessed the incident. Therefore, considering the evidence before the Court, including all the testimony at the February 12, 2014, hearing, the Court finds that nothing shows Officers Omar or Hayes witnessed the tasing or that they could provide additional facts proving Officer Payment did not reasonably infer harm from Mr. Wells. Accordingly, the Court overrules Mr. Wells's objection regarding access to Officers Omar and Hayes.

### C. Objections Regarding Officer Payment Reasonably Inferring Harm

Lastly, Mr. Wells argues that he did not present a threat of harm to Officer Payment and, thus, that Officer Payment was not justified in tasing Mr. Wells. Mr. Wells also disputes Officer Payment's testimony, claiming that Officer Payment did not trip over anything in the cell. Judge Kearney heard testimony regarding these disputed facts at the February 12, 2014, hearing. These disputed facts do not affect the analysis regarding whether Officer Payment reasonably inferred harm from Mr. Wells before tasing him on October 31, 2012. After reviewing the Proposed

Findings and Recommendations and Mr. Wells's objections, as well as a *de novo* review of the record, the Court adopts the Proposed Findings and Recommendations with regard to Officer Payment reasonably inferring harm from Mr. Wells.  The Court finds that, based on the totality of the circumstances and from the perspective of a reasonable officer on the scene, Officer Payment was reasonably concerned for his safety and, thus, did not use excessive force by tasing Mr. Wells.

## V. Conclusion

After a review of the Proposed Findings and Recommendations (Dkt. No. 68), and the timely objections received thereto, as well as a *de novo* review of the record, the Court finds that Mr. Wells has not proved by a preponderance of the evidence that Officer Payment used excessive force against him.  For these reasons, this Court adopts the Proposed Findings and Recommendations in their entirety as this Court's findings of fact and conclusions of law, overrules Mr. Well's objections, dismisses with prejudice Mr. Wells's complaint against Officer Payment, and will enter judgment accordingly.

SO ORDERED and ADJUDGED this 26th day of September, 2014.

_____
Kristine G. Baker
United States District Judge